**Lena Rutz et al., Appellants, v. Hilka Oltman, Appellee.**

**Gen. No. 5610.**

1. SURETYSHIP—*when obligation arises.* As between principal and sureties, the obligation to make good a default is upon the principal so long as he has anything with which to do so; it is only after the exhaustion of his resources that the obligation of the sureties arises.

2. CONTRIBUTION—*when doctrine of enforced.* As between co-sureties the doctrine of contribution is recognized and enforced.

Appeal from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 13, 1912. *Certiorari* denied by Supreme Court (making opinion final).

A. C. NORTON and F. A. ORTMAN, for appellants.

C. C. & L. F. STRAWN, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

On April 28, 1893, Wm. Rutz was appointed administrator of the estate of Emma Cummings, and on June 24, 1895, guardian of her two children, and gave a bond in each capacity, signed by his father, John Rutz, Sr., and his father-in-law, George J. Oltman, as sureties. He got behind in his accounts as such administrator and guardian and on November 20, 1899, judgments were rendered against him. Chas. H. Tuesberg succeeded him in both capacities. On March 10, 1898, Oltman conveyed his real estate to Hilka Oltman, his wife, by two separate deeds. He died September 11, 1898. John Rutz, Sr., died September 9, 1898, leaving a will which was held to be invalid. He left surviving him Reitze Rutz, his widow; Wm. Rutz and John Rutz, Jr., his sons and Myrta Miller, an only child and heir of a deceased son. On December 4, 1899, John Rutz, Jr., died intestate leaving surviving him Lena Rutz, his widow; and John A. Rutz and Roy Rutz, his only children. On August 19, 1899, Wm. Rutz conveyed his interest in the lands of John Rutz, Sr., to his mother-in-law, Hilka Oltman. On November 26, 1900, she paid half the indebtedness of Wm. Rutz for which the estates of John Rutz, Sr., and George J. Oltman were equally liable as bondsmen. On March 15, 1900, the balance due on the judgments was presented against the estate of John Rutz, Sr., and judgments rendered in favor of Tuesberg as administrator and guardian. John Rutz, Sr.'s personal property was insufficient to pay his debts, and on December 4, 1900, the administrator of his estate filed a petition in the County Court of said county for an order to sell real estate. It was decided that the interest which Hilka Oltman acquired in the lands by her deed from Wm. Rutz was subordinate to the rights of the creditors of said estate; and that the administrator first apply the interest of

Wm. Rutz in payment of the judgments before apply-
ing the interest of the other heirs, and any sums that
might remain out of Wm. Rutz's interest be paid
to Hilka Oltman. In that proceeding 58 acres were
set off to Reitze Rutz for dower and homestead and
the interests of all the heirs in 80 acres were sold.
For some reason not appearing here, a tract of 22
acres was not sold. The balance due on the judg-
ments was paid and the remainder of the proceeds
equally divided between Myrta Miller and the heirs
of John Rutz, Jr., nothing being paid to Hilka Oltman.
After the sale and the assignment of dower, John A.
Rutz took possession of the 22 acres, collected some
rents and sold some grain raised thereon to Kirk-
patrick, Lackland & Co. Hilka Oltman notified Kirk-
patrick, Lackland & Co. that she claimed one-third of
the grain grown on said premises and brought suits
before a justice of the peace of said county against
John A. Rutz and Kirkpatrick, Lackland & Co. to
recover one-third of the rent and grain. She obtained
judgments in both cases, which were appealed to the
Circuit Court of said county. Reitze Rutz accounted
to the heirs for the use of two-thirds of the lands not
assigned to her as homestead and dower for the two
years immediately following the death of John Rutz,
Sr., and paid the other third thereof to Hilka Oltman.
A. C. Norton and Frederick W. Winkler became in-
terested in the land through a transfer from Myrta
Miller.

On October 2, 1903, Myrta Miller and Joseph Miller,
her husband; A. C. Norton and Annie S. Norton, his
wife; Frederick W. Winkler and Bertie Winkler, his
wife; Lena Rutz, John A. Rutz and Roy Rutz filed a
bill in chancery in the Circuit Court of said county
making Reitze Rutz and Hilka Oltman defendants,
setting forth the foregoing facts in detail and in sub-
stance the decree of the County Court, and praying
for partition and assignment of dower to Lena Rutz

in the 22 acres, and that if the lands be sold, out of the portion deeded by Wm. Rutz to Hilka Oltman a sufficient amount be paid the complainants to reimburse them for their moneys wrongfully applied to the payment of the debt of Wm. Rutz, and interest thereon; and for an accounting between Reitze Rutz, Hilka Oltman and complainants, and that Hilka Oltman be restrained from further prosecution of the suits pending on appeal until the rights of the parties were ascertained. Hilka Oltman and Reitze Rutz answered the bill. Hilka Oltman filed a cross-bill which she afterwards withdrew and filed an amended answer in which she did not deny the specific allegations of the bill, but denied the validity of the County Court proceedings and the legal conclusions sought to be drawn by complainants from the allegations of the bill. Later Reitze Rutz died, and the 58 acres became similarly situated as the 22 acres, and was brought into these proceedings by a supplemental bill. The case was referred to the master, and while pending before him it was stipulated that there might be a partition or sale of the lands, and if a sale, the moneys held without prejudice to the contentions of any of the parties, pending the final order of distribution; that the judgments pending on appeal from the justice court were correct in amount; that the rent paid Hilka Oltman by Reitze Rutz was correct in amount; and that the court in the chancery cases might take jurisdiction of the entire subject of rents and costs in the cases pending on appeal from the justice court and that those cases should be held in abeyance until the decision of the case at bar. Lena Rutz consented that her dower interest might be sold, and the land was sold.

The court heard the evidence bearing on the interest of the parties in the fund arising from the sale, and decreed that the money received from the interest of Wm. Rutz in the estate of John Rutz, Sr.,

conveyed to Hilka Oltman should be applied in the reduction of the entire indebtedness for which John Rutz, Sr., and George J. Oltman were liable as bondsmen; that Hilka Oltman should be subrogated to the rights of George J. Oltman as to any money she may have paid on his behalf, and that the deficit remaining after applying the entire interest of Wm. Rutz should be borne equally by Hilka Oltman and the estate of John Rutz, Sr., and gave Hilka Oltman the rents accruing from the interest of Wm. Rutz in his father's estate during the litigation, and directed the master to pay her out of the share of John A. Rutz, one-third of the rents which he had collected from the lands, with interest thereon, and out of the moneys of John A. Rutz to pay the costs of his appeal case from the justice court, and directed that the cost of the proceedings should be paid out of the general fund, and for lack of jurisdiction, made no order in the suit of Hilka Oltman against Kirkpatrick, Lackland & Co. and ordered the master to distribute the fund accordingly. From this decree the complainants prosecute this appeal.

Appellants' main contention is that the court erred in holding that Hilka Oltman should be subrogated to the rights of George J. Oltman; that George J. Oltman or Hilka Oltman had no interests or rights in the land inherited by Wm. Rutz from his father's estate so long as Wm. Rutz was liable to the estate of John Rutz, Sr., for moneys which that estate had paid out as surety for Wm. Rutz and for which it had not been reimbursed. This contention is not tenable for the reason that it ignores the doctrine of contribution between sureties and the further fact that Wm. Rutz was obliged to pay his own indebtedness so long as he had anything with which to pay before the sureties would be called upon to complete the obligation. If it be conceded that appellants' contention is true, that Wm. Rutz obtained title by

descent from John Rutz, Sr., his father, and that therefore his indebtedness to his father for his half of the bonded liability must be deducted from it, the result claimed by appellants would not follow. The situation then would be that here are two sureties, and a defalcation for which they are both equally liable, and one of them has paid half and the other one has collected a large sum from the principal debtor. In such case, in our opinion, the surety who had paid would be entitled to contribution from the one who had obtained funds from the principal debtor. When it was fully ascertained how much the loss to the sureties was after the property of Wm. Rutz had been made to respond, that loss should be shared equally between John Rutz, Sr., and George J. Oltman if they had both been living, and between their representatives, they both being dead.

Much is said in the argument of counsel for appellants about the deeds from George J. Oltman to his wife and the deeds from Wm. Rutz to his mother-in-law being made in bad faith and for the purpose of hindering and delaying Wm. Rutz's creditors and the creditors of George J. Oltman by reason of his joint liability and indebtedness with John Rutz, Sr., on the Wm. Rutz bond, and that Hilka Oltman had knowledge of the defalcation of Wm. Rutz and of the joint liability of her husband and John Rutz, Sr., on the bonds of Wm. Rutz as administrator and guardian, and knew that Wm. Rutz was insolvent and could not reimburse his sureties and that she took the deeds with knowledge of these circumstances. As she had paid half the bonded liability, or half the amount of the judgments obtained upon the liability accruing on the bonds, which is all she could be compelled to contribute as between the Oltman suretyship, it is immaterial in a controversy between these two sureties or their heirs at law or legal representatives for what purpose the deeds were made. The deeds recited a

money consideration. Hilka Oltman testified that the deeds were given her to take the place of a will. The disparity between the nature of the consideration expressed in the deeds and that stated in Hilka Oltman's testimony had no bearing on this case, since she paid half of the judgments or bonded obligation, the only amount for which her husband's estate could be held, as between the sureties. Counsel's argument would present a different question if the other half of the bond liability or judgment had not been paid and the representatives of the Cummings estates were attacking these deeds. So too, there is proof that the deed from Wm. Rutz to Hilka Oltman was made in payment for an indebtedness which she had paid for him some years before, and no evidence to the contrary. The decree ignores the deed from Wm. Rutz to Hilka Oltman and she has assigned no cross-errors thereon. It is therefore immaterial whether it was valid or void.

The real controversy in the case is this: By the sale of the interest of Wm. Rutz in the lands in question a considerable portion of the defalcation was made. Appellants contend that as the Oltman half had been paid and only the John Rutz, Sr., half remained to be paid, and as Wm. Rutz could not inherit land from his father except subject to what he owed his father for this bond liability, that the John Rutz, Sr., estate, and through it, its heirs, is entitled to have the benefit of all that was made out of the land. In fact, when a considerable portion of this defalcation had been made out of Wm. Rutz's land or share of the estate the final deficiency to be made up by the sureties was thereby greatly reduced, and it resulted that Hilka Oltman had in fact paid much more than half of the final deficit. The court held that she was entitled to be reimbursed for the excess paid by her in the distribution of the share arising from the sale of the interest of Wm. Rutz. If we concede

that appellants' position is true; that because Wm. Rutz obtained title by descent from his father, and that therefore his indebtedness to his father for his half of this bonded liability must be deducted from it, the result claimed by appellants would not follow. The situation then would be that here are two sureties and a defalcation for which they are both equally liable, and one of them has paid half and the other one has collected a large sum from the principal debtor. Therefore we hold that the order of distribution complained of was made upon the right basis, and the heirs of John Rutz, Sr., are bound in law to contribute to Hilka Oltman her proportion of what they had collected from the sales of the land of the principal debtor.

As Hilka Oltman had a deed of Wm. Rutz's undivided third of the land involved in this proceeding, which had not been set aside, one-third of the rents therefor accrued to her and not to the administrator. As it was stipulated that the equities arising over the rents might be adjusted in this proceeding, the court did not err in affirming the judgment for rents then pending on appeal from the justice of the peace in favor of Hilka Oltman against appellant, John A. Rutz.

The briefs of counsel bristle with many figures of a very confusing character, but being satisfied that the principle of the decree is right, and that if there is any mistake in the figures, the mistake is injurious to appellee and not to appellants, there is no call for us to discuss the figures in detail.

Some complaint is made about the order as to the costs in the justice case, but we apprehend that the decree will not be enforced to compel John A. Rutz to pay more than he is liable for. The costs of the controversy over the distribution were ordered to be paid out of the general fund and apparently no one

but appellee was injured thereby. It is quite probable that appellee was not allowed the full amount due her on account of not allowing her interest on her payment of half the indebtedness, but she has not assigned cross-errors, and she must be treated as satisfied with the decree.

Finding no error in the record, the decree of distribution is affirmed.

*Affirmed.*